,IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SABRINA MANNING SMITH**, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 20-0002-CG-C |
| **FERGUSON ENTERPRISES, LLC**, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant's motion for summary judgment (Doc. 39), Plaintiff's opposition thereto (Doc. 43), Defendant's reply (Doc. 46), and Defendant's objection to Plaintiff's evidence (Doc. 47).  For the reasons explained below, the Court finds that Defendants' motion for summary judgment should be granted.

## FACTS

The Plaintiff in this case, Sabrina Manning Smith, alleges that Defendant, Ferguson Enterprises LLC ("Ferguson") violated the Family Medical Leave Act of 1993 ("FMLA") when it terminated her on June 18, 2019, due to absences that were approved under FMLA. (Doc. 10).  Ferguson denies that Smith was terminated because of FMLA absences and contends that the evidence shows that she was terminated because of complaints from Ferguson's client about her performance.

Smith worked as a buyer for Ferguson at the facility of one of Ferguson's

1

clients, Continental Motors Group ("CMG"). (Doc. 41-1, PageID.194-95). As a buyer, Smith bought parts, materials and tooling for operations, and forecasted inventory for CMG. (Doc. 41-3, PageID.306-307). As a buyer, Smith dealt with CMG on a daily basis and was responsible for all the inventory and all the purchasing for the contract with CMG. (Doc. 41-1, PageID.197-198).

In November 2018, Rodney McCain became Smith's supervisor at Ferguson. (Doc. 41-1, PageID.233). McCain's supervisor at Ferguson was Kevin Freyou who was a General Manager and Director of Branch Management and oversaw Ferguson's relationship with CMG. (Doc. 41-2, PageID.285). On site at CMG, Smith's manager was a CMG employee, Kevin Fountain. (Doc. 41-3, PageID.310). Smith also worked with another CMG employee, Terry Drake. (Doc. 41-4, PageID.344).

In December 2018, Smith's mother was diagnosed with cancer of the larynx. (Doc. 41-3, PageID.336). During the month of December, Smith took vacation time for a couple of full days and a few hours. (Doc. 41-3, PageID.338). Smith requested intermittent FMLA leave and was approved for that leave on January 11, 2019. (Doc. 41-3, PageID.338). Smith did not claim the December time off as FMLA leave although she was approved for FMLA leave retroactive to December 14, 2018. (Doc. 41-3, PageID.338; Doc. 45-1, PageID.385).

On January 15, 2019, before Smith had begun to exercise her leave regularly, Fountain called McCain about Smith's performance at work. (Doc. 41-5,

2

PageID.347).  Fountain told McCain that Smith was not executing her job duties satisfactorily and stated that he wanted Smith removed from her position. (Doc. 41-5, PageID.347).  McCain suggested Fountain send him an email enumerating his concerns and Fountain did so on January 18, 2019. (Doc. 41-5, PageID. 347, 349). The email stated that it was a formal request for a replacement for Smith and listed the following as "some of the reasons":

> 1. The tool crib receiving is falling way behind due to her attendance. There are dozens and dozens of boxes filled with tooling that is not yet received in.
> 2. Her attendance issues are affecting order processing, resulting in CMI either not receiving tooling, or receiving tooling late.
> 3. Her start times, lunch times and exit times are wildly inconsistent, as can be seen in the attached report.
> 4. She has been caught trying to cover up mistakes she has made in ordering, by cancelling tooling requests, and stating that she did not have all the information (Specific references available if needed).
> 5. Her organizational skills are no longer consistent with what CMI is requiring for these very important areas.
> 6. Housekeeping: The areas are not being kept to the standard, even though we currently are paying for extra help. As the lead, she should have this under control.

(Doc. 41-5, PageID.349).  Fountain further stated that Smith's performance was "not up to the level that [CMG] expects from a key supplier such as [Ferguson]." (Doc. 41-5, PageID.349).  According to McCain, he had received oral complaints from CMG about Smith in the Summer of 2018, before he became Smith's supervisor. (Doc. 41-1, PageID.147).  The initial complaint was that Smith would be gone for extended time like for lunchtimes and then there were complaints about her responsiveness and her management of the open-order report. (Doc. 41-1,

PageID.147-148). Fountain confirms that he began to have issues with Smith's responsiveness and ability to forecast CMG's need for parts in the summer of 2018. (Doc. 41-5, PageID.347). Fountain reports that he "found that Smith was reactive, rather than proactive, and did not update CMG on the need to order, or the arrival of, certain parts and tools." (Doc. 41-5, PageID.347).

After the formal written complaint in January 2019, McCain conferred with Ferguson's HR department, with Freyou, and with Smith. (Doc. 41-1, PageID.215-216). McCain did not terminate Smith at that time and instead planned to try to mentor and work with Smith on her communication and organization and "all that other stuff." (Doc. 41-1, PageID.215-216). However, CMG continued to have to correspond with Smith about parts they needed and did not receive or that could not be located, and Smith provided "terrible customer service" and handled issues poorly. (Doc. 41-1, PageID.206-209, 213). CMG would be told a part would be there on a certain day but then Smith would not follow through with notifying the customer that the product was there or work with receiving to get the box processed to get the part to the customer. (Doc. 41-1, PageID.211-212). Communication errors and lack of follow through would cause the customer, CMG, to get upset. (Doc. 41-1, PageID.211-213). An email from CMG, dated April 3, 2019, complains of a "[t]otally unacceptable lack of follow up", asks "[w]ho's paying for the loss in production" and asserts that Ferguson should pay for the expedited delivery charges and changes to the production schedule. (Doc. 41-1, PageID.240). The email further questions why

there would be a shortage and states that the service from Smith "does not meet expectations."

Smith contends that sometimes the issue was because CMG employees did not follow protocol and procedures. For instance, on one occasion she says a part that was reported missing had been ordered and received but the CMG employee looked in the wrong position or coil for the part. (Doc. 45-3, PageID.445-447). Smith reports that that has happened several times. (Doc. 45-3, PageID.447). On other occasions CMG employees would not properly account for the items they took out and the inventory would be incorrect, and Smith would not know that those items needed to be ordered. (Doc. 45-6, PageID.476).

Freyou reports that he heard complaints about Smith's performance beginning in the summer of 2018 and that the complaints increased from January 2019 to June 2019. (Doc. 41-2, PageID.286). Fountain avers that CMG's issues with Smith came to a head in January 2019.

> Smith was not maintaining the tool crib, where tools and parts are kept and was also late in placing orders for parts, in some instances placing orders six weeks later than she should have. Smith's poor communication with CMG also persisted as an issue. This resulted in CMG having to shut down manufacturing multiple times or pay overtime to ensure that manufacturing remained on schedule.

(Doc. 41-5, PageID.347).

According to Drake, as early as summer 2018, he began to notice that Smith was not performing her job duties as required. (Doc. 41-4, PageID.344).

5

> In general terms, the problem was that CMG employees needed parts and tools and those parts and tools were not available, which was an important part of Smith's job responsibilities. Smith was also not responsive to requests from CMG. It was important that Smith timely execute her job responsibilities, because if CMG did not have a part or tool it needed, CMG might have to shut down production. Shut downs were very costly, and could jeopardize CMG's relationship with its own clients if products were not delivered on time.

(Doc. 41-4, PageID.344).  In one instance, Smith "delayed in ordering [a specific screw CMG needed] and "when it finally arrived, the screw was the wrong length" and ultimately Drake had to find a local supplier to make the screws. (Doc. 41-4, PageId.344-345).

On March 15, 2019, McCain prepared a review of Smith's performance titled "Midyear Performance Checkpoint." (Doc. 41-1, PageID.250-255).  At the time of the review Smith calculates that she had used 14 days of FMLA in the three months since her FMLA was approved in December 2018. (Doc. 44, PageID. 373, citing Doc. 45-1, PageID.384-399).  The review stated that her "On time delivery, Fill Rate and PO Order Acknowledgements are below the requirements." (Doc. 41-4, PageID.250). The review also noted that Smith needed to have "[b]etter control of inventory and stock outs," needed to "[m]ove from re-actively managing tasks to being proactive," and needed to "[f]ollow through on commitments and communicate effectively." (Doc. 41-1, PageID. 251-252).  McCain also wrote in the review that Smith "has struggled to stay organized and the customer has complained about both her responsiveness to requests and her overall communication." (Doc. 41-1, PageID.254).

6

According to McCain, Smith's problems with order processing which resulted in CMG not receiving tooling or receiving tooling late were not related to her FMLA leave because Ferguson had a second associate on site "to help with the receiving and putting the product away and doing the cycle counting in the machines" and Smith could delegate those responsibilities when she was out. (Doc. 41-1, PageID.214-215).  McCain testified that Smith's lack of responsiveness, lack of communication and lack of follow-through did not have anything to do with her FMLA leave. (Doc. 41-1, PageID.219).  Nor did her failure to set min/max levels and to prevent stockouts or her failure to be proactive rather than reactive have anything to do with her FMLA absences. (Doc. 41-1, PageID.221, 222).

In June 2019, Katrina Baker, who is the plant manager of the CMG facility and acted as Fountain's supervisor called to complain about Smith. (Doc. 41-2, PageID.286).  McCain described the call as follows:

> So Katrina Baker was very, very blunt. I've been in this business for 19 years, and I've never had a customer yell on the phone, but she was literally screaming that she wanted [Smith] to be removed from the accounts. That they didn't want her to come back in the facility. We needed to move beyond [Smith] and bring in someone that was competent to do the job . . . [S]he was just very short. Just saying that [Smith] was not working out with them. That she wasn't responsive, and they didn't want her back.

(Doc. 41-1, PageID.223-224).  According to Freyou, Katrina Baker "insinuated that CMG would take its business elsewhere if Ferguson did not correct the problem." (Doc.41-2,PageID.286).  Smith states that she was on FMLA leave on June 17, 2019 when Baker reportedly made this call. (Doc. 44, PageID.373).

7

McCain was out of town and called Smith to tell her he was going to have a CMG employee escort her out of the facility. (Doc. 41-1, PageID.225; Doc. 41-3, PageID.339-3340). At that time, Smith reports that McCain told her that she was not terminated. (Doc. 41-3, PageID.340). A CMG employee named Michael Mutascio saw Smith being escorted out and asked Drake if Smith was okay. Mutascio reports that Drake told Mutascio that Smith was terminated "due to her missing so much time." (Doc. 45-6, PageID.480).

Before terminating Smith, Ferguson's HR and divisional general manager, Andy Norkey, looked for other opportunities at Ferguson where they might move Smith. (Doc. 41-1, PageID.237; Doc. 41-2, PageID.286). However, they did not find any appropriate positions elsewhere in the company for Smith to work. (Doc. 41-2, PageID.286). On June 20, 2019, McCain and Freyou, with input from their divisional general manager and HR, decided to terminate Smith because of the lack of service levels that she was providing to CMG and because CMG was no longer willing to work with her. (Doc. 41-1, PageID.225; Doc. 41-2, PageID.286). According to Freyou, "[t]he problem was not that Smith was not at the CMG facility enough; the problem was that, when she was on site at the CMG facility, she was not communicating effectively or performing her job duties adequately." (Doc. 41-2, PageID.287).

On June 21, 2019, McCain emailed Baker and another employee at CMG, stating that as a follow up, he and Julie Goldstrom would be at the CMG facility on

Monday and Julie Goldstrom would be onsite until Thursday afternoon to start getting familiar with the account. (Doc. 41-1 PageID.257-258). Baker responded in an email as follows:

> As stated on the calls, you have not been listening to us nor having acceptable responses. We are not sold on [Ferguson] for Blue Marlin but consider you probational until you perform as expected.
> I look forward to the positive change that you are projecting with Julie.

(Doc. 41-1, PageID.257).

## DISCUSSION

### A. Defendant's Objection to Evidence

Ferguson objects to the affidavit of Mike Mutascio, a "summary calendar" and assorted emails. (Doc. 47). Ferguson argues that Mutascio was not properly disclosed during discovery and that his affidavit should therefore be excluded. Ferguson also argues that the testimony by Mutascio lacks personal knowledge and is hearsay. Specifically, Ferguson points to Mutascio's statement that Terry Drake told him that Smith was terminated due to her missing so much time. This statement is clearly hearsay but at trial Drake could testify regarding whether he made that statement. The foundation and relevance of the statement is more concerning. Even if Drake made the statement, he does not work for Ferguson (he is a CMG employee) and was thus, clearly not a decision maker in this case. Drake had no personal knowledge about Ferguson's motive for having Smith escorted from

9

the facility. To the extent Drake would claim McCain told him that Smith was being terminated at that time for missing so much time, that again would be hearsay and is contrary to McCain's testimony. McCain's testified that Smith was not being terminated at that time and that the reason she was being removed from the facility was not because she had missed so much time. Mutascio's and Drake's beliefs about the reason for Ferguson's decisions are irrelevant. Thus, even if Mutascio's affidavit, and in particular the statement in question, was allowed the evidence would have no bearing on the outcome.

As to the summary calendar and emails, Ferguson contends they should be excluded because they have not been authenticated. The Court notes that the information in the documents in question has not been thoroughly explained in Smith's filings and when cited to, Smith often does not designate the specific portion to which she is referring. Nevertheless, the Court presumes that Smith could authenticate the documents and explain their contents at trial. Smith uses the documents to support statements about the quantity and timing of her FMLA leave. However, even assuming these statements are accurate, the Court finds they do not affect the outcome of the case. Though they might help support Smith's prima facie case, Ferguson has conceded for purposes of this motion that Smith has met her burden of showing a prima facie case. (Doc. 40, PageID.176). Smith's temporal-proximity arguments may be enough to establish a prima facie case of retaliation, but "temporal proximity by itself generally cannot prove that an

10

employer's proffered reasons are pretextual." *Todd v. Fayette Cty. Sch. Dist.*, 2021 WL 2149351, at *10 (11th Cir. May 27, 2021).  In light of the above, the Court finds that Ferguson's objection to the evidence is moot.

**B. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d

1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that

12

party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## C. Smith's Claim

Smith claims she was terminated for taking FMLA leave. "To prove FMLA retaliation, an employee must show that h[er] employer intentionally discriminated against h[er] for exercising an FMLA right." *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008) (citations omitted). Absent direct evidence of retaliatory intent, courts apply the burdenshifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 1268. In the instant case, Smith does not claim there is any direct evidence of retaliatory intent. Under the McDonnel Douglas burdenshifting framework, the plaintiff must first establish a prima facie case. To establish a prima facie case of FMLA retaliation Smith must show the following:

> (1) [s]he engaged in statutorily protected activity,
> (2) [s]he suffered an adverse employment decision, and
> (3) the decision was causally related to the protected activity.

*Martin*, 543 F.3rd at 1268 (citation omitted). It is clear that Smith's exercise of

FMLA leave is statutorily protected and that she suffered an adverse employment decision when she was terminated. Although Ferguson denies that Smith can establish a causal relationship, for the purposes of this motion only, Ferguson concedes that Smith could establish a prima facie case of FMLA retaliation. (Doc. 40, PageID.176).

"Once the employee sets forth a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the employment decision." *Todd v. Fayette Cty. Sch. Dist.*, 2021 WL 2149351, at *9 (11th Cir. May 27, 2021). "[T]he employer's burden is merely one of production; it 'need not persuade the court that it was actually motivated by the proffered reasons." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). Here, Ferguson claims that Smith was terminated because its client CMG asked that she be removed due to her poor performance. Ferguson has produced evidence to support that claim and the Court finds it has met its burden of proffering a nondiscriminatory reason for terminating Smith.

If the Defendant proffers a legitimate reason for the employment decisions, "[t]he burden then shifts back to the plaintiff, who must show that the employer's proffered reasons are pretextual, or a cover for discrimination. *Hamilton v. Montgomery Cty. Bd. of Educ.*, 122 F. Supp. 2d 1273, 1280 (M.D. Ala. 2000). "At the pretext stage, in order to survive summary judgment, Plaintiff must provide

14

sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." *Miller v. Bed, Bath & Beyond, Inc.*, 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing *Combs*, 106 F.3d at 1538). Plaintiff may do this "(1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." *Id.* (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.' " *Hamilton*, 122 F. Supp.2d at 1281 (quoting *Combs,* 106 F.3d at 1539). The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Smith asserts that the nondiscriminatory reason should not be believed because her poor performance was not documented until after her FMLA leave was approved. Smith argues that her 2018 performance reviews by a former supervisor were good and that there are no emails or written complaints about her performance in 2018. However, this does not controvert Ferguson's proffer that in 2019 the client, CMG, was not happy with Smith's work and basically demanded that she be removed. To the extent Smith is trying to assert that the timing of the complaint shows pretext, as the Court stated above, Smith's temporal-proximity

15

arguments may be enough to establish a prima facie case of retaliation, but "temporal proximity by itself generally cannot prove that an employer's proffered reasons are pretextual." *Todd v. Fayette Cty. Sch. Dist.*, 2021 WL 2149351, at *10 (11th Cir. May 27, 2021).

Smith also asserts that the reason the client requested that she be removed was due to her absences. Smith points to the report by CMG's employee, Michael Mutascio, that Terry Drake told Mutascio that Smith was terminated "due to her missing so much time." As explained above with regard to Ferguson's objection to this evidence, even if Drake made the statement, he does not work for Ferguson (he is a CMG employee) and was thus, clearly not a decision maker in this case. Drake had no personal knowledge about Ferguson's motive for having Smith escorted from the facility. Mutascio's and Drake's beliefs about the reason for Ferguson's decisions are irrelevant. Ferguson presented evidence indicating that it terminated Smith because CMG requested or demanded that she be removed. The evidence indicates that the CMG personnel who requested she be removed, Fountain and Baker, complained about Smith's responsiveness, her competency and her general unsatisfactory execution of her job duties. None of the testimony or documentation indicates that CMG requested that she be replaced because she had taken too much time off or because they wanted a replacement that would not be out as much. CMG only indicated that they needed someone competent that would communicate well, follow through and be responsive to CMG's needs.

16

Smith also asserts that she was not actually at fault for the conduct of which CMG complained. However, Ferguson's reason for terminating Smith was because CMG demanded that she be removed from the position. Even if CMG's conclusion that Smith performed poorly was mistaken or wrong, that does not change the fact that CMG requested that Ferguson remove her. Moreover, even if Ferguson was mistaken in its assessment of Smith's performance that would not show that Smith was terminated because of her FMLA leave. "An employer may terminate an employee for 'a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.' " *Herron-Williams v. Alabama State Univ.*, 805 F. App'x 622, 631 (11th Cir. 2020) (quoting *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015)). "[W]hether an employment decision was prudent or fair is irrelevant." *King v. Sec'y, US Dep't of the Army*, 652 F. App'x 845, 848 (11th Cir. 2016) (citation omitted).

Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Chapman,* 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).  It is not appropriate for either the plaintiff or this Court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030.

## CONCLUSION

For the reasons explained above, the Court finds that Ferguson has proffered

a nondiscriminatory reason for terminating Smith and that Smith has not shown that the proffered reasons are mere pretext for retaliation. Accordingly, the motion of Defendant Ferguson Enterprises LLC for summary judgment (Doc. 39), is **GRANTED**.

    **DONE** and **ORDERED** this 11th day of June, 2021.

                                        /s/ Callie V. S. Granade
                                        SENIOR UNITED STATES DISTRICT JUDGE